**Slip Op. 15-22**

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ――――――――――――――――――――― : | |
| JINXIANG YUANXIN IMPORT & : | |
| EXPORT CO., LTD., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant, : | |
| : | Before: Richard K. Eaton, Senior Judge |
| and : | |
| : | Court No. 11-00145 |
| FRESH GARLIC PRODUCERS : | |
| ASSOCIATION, CHRISTOPHER : | |
| RANCH, L.L.C., THE GARLIC : | |
| COMPANY, VALLEY GARLIC, and : | **PUBLIC VERSION** |
| VESSEY AND COMPANY, INC., : | |
| : | |
| Defendant-Intervenors. : | |
| ――――――――――――――――――――― : | |

<u>OPINION</u>

[The Department of Commerce's Final Results of Redetermination are sustained.]

Dated: March 23, 2015

*John J. Kenkel*, deKieffer & Horgan, PLLC, of Washington, D.C., argued for plaintiff. With him on the brief were *Gregory S. Menegaz* and *J. Kevin Horgan*.

*Alexander O. Canizares*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant.   With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director.   Of counsel on the brief was *Justin R. Becker*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*Michael J. Coursey*, Kelley Drye & Warren LLP, of Washington, D.C., argued for defendant-intervenors.   With him on the brief was *John M. Herrmann*.

EATON, Senior Judge: Before the court are the Department of Commerce's (the "Department" or "Commerce") Final Results of Redetermination Pursuant to Remand, dated November 22, 2013.   Final Results of Redetermination Pursuant to Remand (ECF Dkt. No. 79) ("Remand Results").   The court remanded Commerce's final determination in *Garlic From the People's Republic of China*, 76 Fed. Reg. 19,322 (Dep't of Commerce Apr. 7, 2011) (rescission of antidumping duty new shipper reviews), and the accompanying Final Bona Fides Memorandum (Dep't of Commerce Mar. 31, 2011) (collectively, the "Rescission"), in which the Department rescinded plaintiff Jinxiang Yuanxin Import & Export Co., Ltd.'s ("plaintiff" or "Yuanxin") new shipper review under the antidumping duty order on fresh garlic from the People's Republic of China ("PRC").[1]   *See* Mem. from Mark Hoadley, Program Manager, AD/CVD Operations, Import Administration, to Barbara E. Tillman, Office Director, AD/CVD Operations, Import Administration, PD 130, CD 55 (Mar. 31, 2011), ECF Dkt. No. 31 ("Bona Fides Mem."); Fresh Garlic From the PRC, 59 Fed. Reg. 59,209 (Dep't of Commerce Nov. 16, 1994) (antidumping duty order).   Although sustaining Commerce's determination that atypical factors indicative of a non-bona fide sale surrounded Yuanxin's transaction, the court on remand directed Commerce to support its bona fides analysis of Yuanxin's sales price and quantity with substantial evidence. *See Jinxiang Yuanxin Imp. & Exp. Co. v. United States*, 37 CIT __, __, Slip Op. 13-77, at 24–25 (2013) ("*Yuanxin I*").

In its Remand Results, Commerce continued to find that Yuanxin's sale of single-clove garlic was not bona fide and that plaintiff's new shipper review was properly rescinded.   *See* Remand Results at 7.   Plaintiff filed comments to the Remand Results, arguing that Commerce's analysis was "severely flawed and not based on substantial evidence," and asked the court to

---

[1]         Yuanxin is an exporter of fresh garlic from the PRC.

remand this case for a second time.   Comments on Final Results of Redetermination Pursuant to

Ct. Order 7 (ECF Dkt. No. 84) ("Pl.'s Comments").   Defendant United States ("defendant") and

defendant-intervenors, the Fresh Garlic Producers Association and its individual members,

Christopher Ranch, L.L.C., The Garlic Company, Valley Garlic, and Vessey and Company, Inc.

(collectively, "defendant-intervenors"),[2] filed comments in support of the Department's

determination, and urged the court to sustain the Remand Results in their entirety.   *See* Def.'s

Resp. to Pl.'s Comments on the Remand Redetermination (ECF Dkt. No. 99) ("Def.'s

Comments"); Def.-ints.' Responsive Comments on Redetermination Pursuant to Ct. Order (ECF

Dkt. No. 96) ("Def.-ints.' Comments").   The court has jurisdiction pursuant to 28 U.S.C. §

1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(iii).

       For the reasons set forth below, the court holds that Commerce's determination, that

Yuanxin's sale was not bona fide, and the resulting rescission of plaintiff's new shipper review are

supported by substantial evidence and otherwise in accordance with law.   In addition, the court

finds that the Department's alternative methodology for analyzing the bona fide nature of

Yuanxin's sales price in the Remand Results complies with the court's order in *Yuanxin I.*   Thus,

the Remand Results are sustained.


                                          **STANDARD OF REVIEW**

       "The court shall hold unlawful any determination, finding, or conclusion found . . . to be

unsupported by substantial evidence on the record, or otherwise not in accordance with law."   19

U.S.C. § 1516a(b)(1)(B)(i).   "The results of a redetermination pursuant to court remand are also

---

       [2]       Defendant-intervenors are all producers of the domestic like product.   Mot. for
Leave to Intervene as of Right 1–2 (ECF Dkt. No. 16).

reviewed for compliance with the court's remand order." *Yantai Xinke Steel Structure Co. v. United States*, 38 CIT __, __, Slip. Op. 14-38, at 4 (2014) (quoting *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014)).

## DISCUSSION

### I.   BACKGROUND

This matter was originally before the court on Yuanxin's challenge to (1) Commerce's final determination that Yuanxin's sale of single-clove garlic during the period of review, November 1, 2008 through October 31, 2009 ("POR"), was not bona fide, and (2) the Department's rescission of plaintiff's new shipper review.  *See* Rescission, 76 Fed. Reg. at 19,322.  In the Rescission, Commerce determined that Yuanxin's sale was not bona fide for three reasons: "(1) Yuanxin's sale price [was] so high as to be commercially unreasonable and not indicative of future sales, (2) Yuanxin's sales quantity [was] not representative of the garlic industry, and (3) the structure of Yuanxin's U.S. sale [was] of an unusual nature."  Rescission, 76 Fed. Reg. at 19,324.

In reaching this conclusion, Commerce noted that Yuanxin[3] made one sale of single-clove garlic to its unaffiliated U.S. customer ("U.S. customer"),[4] a sporting and athletic goods

---

[3]       Plaintiff Yuanxin was the producer, exporter, and importer of record for its sale. Mem. from Thomas Gilgunn, Program Manager, AD/CVD Operations, Import Administration, to Barbara E. Tillman, Office Director, AD/CVD Operations, Import Administration at 3, PD 79 (Nov. 1, 2010), ECF Dkt. No. 31.

[4]       Yuanxin's U.S. customer in this transaction was [[                                        ]] Mem. from Thomas Gilgunn, Program Manager, AD/CVD Operations, Import Administration, to Barbara E. Tillman, Office Director, AD/CVD Operations, Import Administration at 3, CD 38 (Nov. 1, 2010), ECF Dkt. No. 31.

manufacturer, which did not purchase garlic from any other source during or after the POR.[5]

Letter from David B. Da, D&B Consultants Co., Ltd, to Secretary of Commerce, U.S.

Department of Commerce at 27, PD 44 (June 4, 2010), ECF Dkt. No. 31.   After purchasing the

single-clove garlic, Yuanxin's U.S. customer immediately resold the merchandise to a U.S.

wholesaler[6] that had previously purchased single-clove garlic from another exporter, Jinxiang

Hejia Co., Ltd. ("Jinxiang Hejia"),[7] during the prior period of review.[8]   *See* Bona Fides Mem. at

8.

        The Department compared Yuanxin's single-clove garlic sales price to the "U.S. Customs

and Border Protection ('Customs') data run containing all entries of merchandise exported to the

United States from the PRC during the POR under U.S. Harmonized Tariff Schedule ('HTSUS')[9]

---

[5]        Yuanxin sold [[        ]] kilograms of single-clove garlic with a total value of
[[                ]], or a weighted-average unit value of [[        ]] per kilogram, to its U.S. customer.
Mem. from Thomas Gilgunn, Program Manager, AD/CVD Operations, Import Administration, to
Barbara E. Tillman, Office Director, AD/CVD Operations, Import Administration at 4, CD 38
(Nov. 1, 2010), ECF Dkt. No. 31.

[6]        The U.S. wholesaler was [[                         ]].  Bona Fides Mem. at 8.

[7]        Jinxiang Hejia is a Chinese exporter whose single sale of single-clove garlic was
the subject of a new shipper review during the period of review immediately preceding Yuanxin's
sale of single-clove garlic that is at issue here.   The review of Jinxiang Hejia's sale is "the only
other review conducted for a sale of single-clove garlic."   *Yuanxin I*, 37 CIT at __, Slip Op. 13-77,
at 8 (citing Fresh Garlic from the PRC, 74 Fed. Reg. 50,952 (Dep't of Commerce Oct. 2, 2009)
(final results and final rescission, in part, of new shipper reviews), and accompanying Issues and
Decision Memorandum).

[8]        Jinxiang Hejia's period of review was November 1, 2007 through June 9, 2008.
*Jinxiang Hejia Co. v. United States*, 35 CIT __, __, Slip Op. 11-112, at 2 (2011) (citation omitted).

[9]        The HTSUS organizes the various classifications of imported goods by headings,
which "contain 'general categories of merchandise,'" and subheadings, which "provide a more
particularized segregation of the goods within each category."   *Deckers Outdoor Corp. v. United
States*, 714 F.3d 1363, 1366 (Fed. Cir. 2013) (quoting *Orlando Food Corp. v. United States*, 140
F.3d 1437, 1439 (Fed. Cir. 1998)) (internal quotation marks omitted).   These headings and
                                                                              (footnote continued)

category 0703.20.0010 for 'Garlic, Fresh Whole Bulbs,' a category that includes both single-clove

and multi-clove fresh, whole garlic bulbs." *Yuanxin I*, 37 CIT at __, Slip Op. 13-77, at 7–8 (citing

Bona Fides Mem. at 4).   The Customs data, which represented predominantly multi-clove garlic

imports, yielded an average unit value ("AUV") for the subject merchandise.[10]   *See* Bona Fides

Mem. at 6.   In making this comparison, Commerce diverged from its practice in *Jinxiang Hejia*

*Co. v. United States*, an appeal to this Court of a review of the antidumping duty order on fresh

garlic from the PRC during the prior period of review, in which the Department had found

single-clove garlic bulbs to be "unique," such that a price comparison between single-clove and

multi-clove garlic was inappropriate.   *Yuanxin I*, 37 CIT at __, Slip Op. 13-77, at 13 (citing

*Jinxiang Hejia Co. v. United States*, 35 CIT __, __, Slip Op. 11-112, at 6 (2011) ("*Hejia*")).

In *Yuanxin I*, the court held that (1) Commerce had failed to explain adequately its

departure from the practice it had established in *Hejia* of treating single-clove garlic as a unique

product and (2) the Department had failed to support adequately its determination that it was

appropriate to compare Yuanxin's single-clove garlic sales price and quantity to Customs data on

multi-clove garlic sales prices and quantities.   *Id.* at __, Slip Op. 13-77, at 24–25.   The court

further determined that, "[w]hile Commerce's analysis of Yuanxin's third-country sales was

reasonable, its conclusion that Yuanxin's future pricing would necessarily follow that of its

third-country sales . . . ," which fell after the POR, was not reasonable, nor was the conclusion

supported by substantial evidence.   *See id.* at __, Slip Op. 13-77, at 18, 25.   The court, however,

---

subheadings are "harmonized with the internationally-developed HS nomenclature up to the
six-digit level, *i.e.*, to the two-digit 'chapter,' the four-digit 'heading,' and the six-digit
'subheading' levels" per the Harmonized System Convention.   *Victoria's Secret Direct, LLC v.*
*United States*, 37 CIT __, __, 908 F. Supp. 2d 1332, 1345 (2013) (citation omitted).

[10]      The AUV in the Customs data was [[          ]] per kilogram.   Bona Fides Mem. at
6.

agreed, that Commerce's "conclusion that the circumstances surrounding Yuanxin's transaction were atypical of normal business practices and indicative of a non-bona fide sale was supported by substantial evidence." *Id.* at __, Slip Op. 13-77, at 25.   Thus, "plaintiff's motion for judgment on the agency record [was] granted, in part, and Commerce's final determination rescinding plaintiff's new shipper review [was] remanded." *Id.*

> Specifically, the court instructed

> that, on remand, if Commerce wishe[d] to rely upon a comparison of Yuanxin's sales price to the AUV from the Customs data, it must explain its departure from the practice it established in *Hejia*, and demonstrate with substantial evidence (1) that Yuanxin's single-clove garlic is not a unique product when compared to multi-clove garlic, (2) that there is not a distinct market for single-clove garlic, and (3) that factors relating to product uniqueness and distinct market do not affect the price that single-clove garlic commands.

*Id.*   In addition, the Department was directed to "take into account [Yuanxin's] arguments relating to *Fish Fillets*, *Stainless Steel*, and *Wooden Bedroom Furniture*,[11] as well as the evidence relating to the relatively high offer prices for single-clove garlic in India and the high prices for plaintiff's third-country sales." *Id.* at __, Slip Op. 13-77, at 25–26.

The court further directed that, if, on remand, Commerce were to find a comparison to the AUV to be invalid, it "must use another methodology to determine the commercial reasonableness of Yuanxin's sales price," and that it must, based on the same methodology for its price analysis, determine "a reasonable methodology for examining the quantity of Yuanxin's sale." *Id.* at __, Slip Op. 13-77, at 26.   The Department was also instructed to "reopen the record to solicit information regarding [(1)] whether single-clove garlic is a unique product, [(2)] whether there is a

---

11        According to plaintiff, in each of these three reviews, Commerce had found that the prices, which were higher than the average price for goods under the tariff heading, were justified because each product under review was unique and therefore distinct from other products under the same heading.   *Yuanxin I*, 37 CIT at __, Slip Op. 13-77, at 9 (citing Mem. of Pl. Jinxiang Yuanxin Imp. & Exp. Co., Ltd. in Supp. of Mot. for J. on the Agency R. 28 (ECF Dkt. No. 30)).

distinct or specialized market for single-clove garlic, and [(3)] whether these facts affect the price

that single-clove garlic commands." *Id.* Additionally, the court "ordered that the Department

may reopen the record to solicit information for any other purpose." *Id.*

Following the court's order, Commerce reopened the record to allow the parties to submit

additional information about the single-clove garlic market. Remand Results at 5. The

Department placed on the record publicly available information about single-clove garlic, as well

as Commerce's preliminary bona fides analysis and calculation memorandum from its review of a

single sale of single-clove garlic made by Jinxiang Hejia during the prior period of review.

Remand Results at 5. Defendant-intervenors submitted exhibits related to garlic pricing and

marketing, and Yuanxin introduced market and price data. Remand Results at 5. Plaintiff also

filed further information to supplement the record, which Commerce rejected. Remand Results at

5, 6.


## II.   LEGAL FRAMEWORK

Upon request, Commerce is required by statute to perform administrative reviews "for new

exporters and producers" whose sales have not previously been examined. 19 U.S.C. §

1675(a)(2)(B). Through these new shipper reviews, Commerce's task is to determine whether

new exporters and producers, subject to an existing antidumping duty order, are entitled to their

own duty rates, and if so, to calculate those rates. *See Hebei New Donghua Amino Acid Co. v.*

*United States*, 29 CIT 603, 604, 374 F. Supp. 2d 1333, 1335 (2005).

In practice, this determination involves an evaluation of whether the transactions under

review are "bona fide or commercially reasonable." *Shandong Chenhe Int'l Trading Co. v.*

*United States*, 34 CIT __, __, Slip Op. 10-129, at 5 (2010) (citing 19 C.F.R. § 351.214(b)(2)

(2009); *Hebei New Donghua*, 29 CIT at 608, 374 F. Supp. 2d at 1338).   As part of its inquiry,

Commerce "applies a 'totality of circumstances test' focusing on whether or not the transaction is

'commercially reasonable' or 'atypical of normal business practices.'"   *Hebei New Donghua*, 29

CIT at 610, 374 F. Supp. 2d at 1339 (citations omitted).

      To evaluate whether a sale is "commercially reasonable," Commerce considers "(1) the

timing of the sale, (2) the price and quantity[,] (3) the expenses arising from the transaction, (4)

whether the goods were resold at a profit, (5) and whether the transaction was at an arm's length

basis."   *Id.* (citations omitted).   In weighing these factors, the Department seeks to determine

"whether the sale(s) under review are indicative of future commercial behavior."   *Id.* at 613, 374

F. Supp. 2d at 1342 (citation omitted).   Additionally, "a primary indication that a sale (or series of

sales) is not bona fide is evidence that the sales price is unusually high in comparison to the prices

of other sales of subject merchandise during the [period of review]."   *Zhengzhou Huachao Indus.

v. United States*, 37 CIT __, __, Slip Op. 13-61, at 7 (2013).   An unusually high sales price is

significant because it may be indicative of a price arrangement made "to avoid the imposition of a

significant antidumping duty margin."   *Id.* (citing *Jinxiang Chengda Imp. & Exp. Co. v. United

States*, 37 CIT __, __, Slip Op. 13-40, at 4–5 (2013)).

      In determining whether a sale is "atypical of normal business practices," Commerce looks

to all circumstances surrounding the sale.   *See Catfish Farmers of Am. v. United States*, 33 CIT

1258, 1261–62, 641 F. Supp. 2d 1362, 1368–69 (2009).   In particular, "[i]f the weight of the

evidence indicates that a sale is not typical of a company's normal business practices, the sale is

not consistent with good business practices, or the transaction has been so artificially structured as

to be commercially unreasonable, the Department [will] find[] that it is not a bona fide commercial

transaction and must be excluded from review." *Id.* at 1261, 641 F. Supp. 2d at 1368 (citation

omitted) (internal quotation marks omitted).


**III.    THE DEPARTMENT COMPLIED WITH THE COURT'S REMAND ORDER**

In its Remand Results, Commerce continued to find that Yuanxin's sale of single-clove

garlic was not bona fide, primarily for two reasons: (1) Yuanxin's price was "aberrationally high,"

and (2) atypical factors surrounded Yuanxin's sale.   Remand Results at 6.   Because the court had

already found in *Yuanxin I* that the Department's conclusion that plaintiff's sale was atypical was

supported by substantial evidence, Commerce properly declined to reexamine the issue.   *See*

*Yuanxin I*, 37 CIT at __, Slip Op. 13-77, at 25; Remand Results 6.

In reaching its findings that Yuanxin's price was "aberrationally high," the Department

ceased to rely on a direct comparison of Yuanxin's sales price to the AUV.   Rather, Commerce

compared Yuanxin's sales price, price premium, and sales quantity to other prices, premiums, and

quantities on the record.   Specifically, in analyzing Yuanxin's sales price in the context of other

single-clove garlic prices, the Department looked to (1) Jinxiang Hejia's U.S. sales price from the

prior period of review, (2) price quotes from exporters in India[12] and the PRC, and (3) U.S. retail

prices.   Remand Results at 9–11.

Thus, on remand, the Department abandoned its reliance on a direct comparison of

Yuanxin's single-clove garlic sales price to Customs' AUV data, which was largely comprised of

---

[12]     Plaintiff objects to Commerce's decision to rely on price offers for Indian
single-clove garlic during plaintiff's POR as part of its analysis on remand.   *See* Pl.'s Comments
10–11, 14.   Because the evidence that these prices would provide is unnecessary for the court to
reach its conclusions, the court need not address Commerce's use of these prices.   Further,
because the court is not considering the Indian price offers, Commerce's adherence to the court's
order in *Yuanxin I*, and its subsequent analysis, with respect to these prices, is immaterial to the
court's conclusions.   *See Yuanxin I*, 37 CIT at __, Slip Op. 13-77, at 25–26.

multi-clove garlic prices, finding such a comparison to be inappropriate.   Remand Results at 6–7, 8.   Instead, the Department compared Yuanxin's single-clove garlic sales price to other prices of single-clove garlic on the record.   In addition, it compared the price premium of Yuanxin's sales price over the AUV from the Customs data, to other percentage differences in prices for single- and multi-clove garlic on the record.   *See* Remand Results at 6–7, 8.   Because the Department used this alternative methodology to determine the commercial reasonableness of Yuanxin's sales price, Commerce correctly reasoned that it no longer needed "to determine whether single-clove garlic [was] a unique product with a distinct market compared to multi-clove garlic" as per the court's instructions in *Yuanxin I.*   Remand Results at 8 (citing *Yuanxin I*, 37 CIT at __, Slip Op. 13-77, at 25).   In addition, having abandoned its reliance on a direct comparison of plaintiff's single-clove garlic sales price to the AUV of the Customs data, the Department's analysis is no longer incompatible with its determinations in the three reviews of *Fish Fillets*, *Stainless Steel*, and *Wooden Bedroom Furniture*.   *See* Remand Results at 8.   As such, it was no longer necessary for it to evaluate and consider plaintiff's comments on remand relating to these proceedings as directed by the court in *Yuanxin I.*   *See Yuanxin I*, 37 CIT at __, Slip Op. 13-77, at 25.   Moreover, in accord with the court's order, Commerce ceased to rely on "its conclusion that Yuanxin's future pricing would necessarily follow that of its third-country sales," which were made after the POR. *See Yuanxin I*, 37 CIT at __, Slip Op. 13-77, at 18, 25.

The court finds that the Department's new methodology, used in the Remand Results, for determining the commercial reasonableness of Yuanxin's sales price does not conflict with its prior determination in *Hejia* because it does not involve a *direct* comparison of Yuanxin's sales price to the AUV (the AUV reflects primarily average multi-clove garlic sales prices). Previously, in *Yuanxin I*, the court was concerned with Commerce's failure to explain adequately

its departure from its practice in *Hejia*, in which it had "found that single-clove garlic was 'unique'

and therefore a comparison with entries of multi-clove garlic was not appropriate."   *Yuanxin I*, 37

CIT at __, Slip Op. 13-77, at 13.   Because Commerce's new methodology acknowledges that

single-clove garlic is a unique product, Commerce's methodology is in accord with the court's

remand order.


IV.     **REMAND RESULTS – UNCONTESTED DETERMINATION: THE DEPARTMENT'S DETERMINATION REGARDING YUANXIN'S SALES QUANTITY IS SUSTAINED**

In addition to abandoning its comparison of Yuanxin's sales price to the average price in

the Customs data, Commerce also declined to compare Yuanxin's sales quantity to the average

quantity in the Customs data.   Rather, the Department compared Yuanxin's sales quantity to

Jinxiang Hejia's quantity in the prior period of review and concluded that "the sales quantity d[id]

not provide any indication that Yuanxin's transaction [was] not *bona fide*."[13]   Remand Results at

15.   That is, since the two sales quantities were relatively similar to one another, and Jinxiang

Hejia's quantity had been previously found to be bona fide, the Department reasoned that it could

not find that Yuanxin's sales quantity was not bona fide.

Because the Department's conclusion is reasonable, and because no party contests this

determination, it is sustained.   *See* Pl.'s Comments 18; Def.'s Comments 8 n.1.

---

[13]     Jinxiang Hejia's sales quantity was [[          ]] kilograms, and Yuanxin's was
[[          ]] kilograms.   Remand Results at 14.

## V.   REMAND RESULTS – CONTESTED DETERMINATIONS

### A.   The Department's Determinations Regarding Yuanxin's Sales Price and Price Premium Are Supported by Substantial Evidence and in Accordance with Law

> #### 1.   *Commerce's Determination that Yuanxin's Sales Price Was Aberrational and Thus Not Bona Fide Is Sustained*

The Department began its analysis in the Remand Results by comparing Yuanxin's

single-clove garlic sales price to (1) Jinxiang Hejia's U.S. sales price for single-clove garlic, (2)

single-clove garlic price quotes from exporters in the PRC, and (3) retail prices for single-clove

garlic.   Remand Results at 9–11.   As discussed below, this analysis demonstrates with

substantial evidence that Yuanxin's sales price was aberrationally high.


#### i.   Comparison to Jinxiang Hejia's U.S. Sales Price

Aside from Yuanxin's sale under review, Jinxiang Hejia's sale during the prior period of

review represents the only actual single-clove garlic sale from the PRC to the United States on the

record.   In comparing Yuanxin's sale to Jinxiang Hejia's, Commerce found that Yuanxin's U.S.

sales price of single-clove garlic was significantly higher than Jinxiang Hejia's price adjusted for

inflation from the previous period of review, for the same product sold in the same market.[14]   *See*

Remand Results at 9.   The Department found this price differential to be particularly aberrational

based on record evidence that it claims demonstrated that the price of multi-clove garlic decreased

---

[14]      Specifically, Commerce found that Yuanxin's U.S. sales price of [[          ]] per kilogram of single-clove garlic was [[      ]] percent [[            ]] than Jinxiang Hejia's inflation-adjusted price of [[            ]] per kilogram, both of which were sold in the same market [[            ]] apart.   Remand Results at 9.   Commerce notes that it "has previously found a sale price 30 percent higher than the average of other sales to not be *bona fide*."   Remand Results at 9 n.35 (citing Uncovered Innerspring Units From the PRC, 76 Fed. Reg. 80,337 (Dep't of Commerce Dec. 23, 2011) (rescission of antidumping duty new shipper review), *aff'd, Foshan Nanhai Jiujiang Quan Li Spring Hardware Factory v. United States*, 37 CIT __, __, 920 F. Supp. 2d 1350, 1354, 1358 (2013)).

between Jinxiang Hejia's period of review and Yuanxin's POR,[15] "suggest[ing] that the market

price for garlic in general decreased during this time."   Remand Results at 9–10.   In other words,

Commerce found it unreasonable that, in the context of an overall drop in fresh garlic prices,

Yuanxin's product price would so far exceed Jinxiang Hejia's inflation-adjusted price.   Remand

Results at 9–10.

 Plaintiff objects to this finding, arguing "that there is no record evidence to *not* support a

price increase" for single-clove garlic between Jinxiang Hejia's period of review and Yuanxin's

POR because there is no evidence of supply and demand factors during those periods.   Pl.'s

Comments 8.

 The burden of building the administrative record, however, lies with the interested parties.

*QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (citations omitted).   Thus,

if it believed that the price increase was justified, it was plaintiff's obligation to supply Commerce

with a probative source demonstrating that the price for single-clove garlic increased during that

time period.   Plaintiff's failure to do so leaves the Department without evidence that contradicts

the record evidence demonstrating a general price drop in the garlic market.

 Moreover, as defendant points out, there is no evidence indicating that Yuanxin's

significant price increase soon after Jinxiang Hejia's sale[16] is reasonable.   Def.'s Comments 9.

Indeed, the record indicates that it is not.   First, that Yuanxin's sales quantity is comparable to

Jinxiang Hejia's eliminates the size of the sale as a reason for Yuanxin's significantly higher sales

---

 [15]     Record evidence indicates that the market price for all fresh garlic [[          ]]
by [[     ]] percent between Jinxiang Hejia's and Yuanxin's periods of review.   *See* Remand
Results at 9.

 [16]     Yuanxin's price is [[     ]] percent [[          ]] than the sales price of the same
merchandise sold by Jinxiang Hejia just [[     ]] months earlier.   Remand Results at 9.

price.   *See* Remand Results at 10.   That is, as Commerce concluded, "had [Jinxiang] Hejia's sale consisted of a significantly larger quantity purchase, it could have, in part, explained [the] differences in per-unit prices."   Remand Results at 10.

Yuanxin further claims that "four years [after the end of Yuanxin's POR], retail prices in the U.S., Europe, and Australia of single-clove garlic are extremely high compared to multi-clove garlic."   Pl.'s Comments 8.   Also, according to plaintiff, Commerce improperly assumed that, because multi-clove garlic prices decreased between Jinxiang Hejia's and Yuanxin's periods of review,[17] single-clove garlic prices must have decreased as well.   Pl.'s Comments 8.

These arguments are meritless.   That single-clove garlic prices were higher than multi-clove garlic several years after the POR does not speak to whether single-clove garlic prices increased or decreased between Jinxiang Hejia's sale and that of Yuanxin.   More importantly, Commerce provided evidence that multi-clove garlic prices decreased following plaintiff's POR:

> The evidence on the record indicates that there was a decline in the price for multi-clove garlic between Hejia's and Yuanxin's [periods of review].   The Department routinely uses broad indicators of price movements in adjusting price information from one period to another when more specific indicators are not available.   For example, we often use only the consumer price index ("CPI")—the broadest measure of inflation in a country—to adjust values for specific factors of production.   In this case, after applying the CPI, we relied on the measure of price movements most specific to the product under review: the fall of the AUV for multi-clove garlic . . . between the Hejia and Yuanxin review periods.

Remand Results at 17.   In connection with this finding, Commerce cited evidence demonstrating that "multi-clove and single-clove [garlic] are grown, harvested[,] and sold in the same manner."   Remand Results at 19 & nn.63–64.   Indeed, the "record indicates growing single-clove garlic requires the same resources required to grow multi-clove garlic," and "single-clove garlic can

---

[17]       As previously noted, Jinxiang Hejia's period of review was November 1, 2007 through June 9, 2008, and Yuanxin's POR was November 1, 2008 through October 31, 2009.

simply be the unintentional result of a multi-clove garlic crop receiving inadequate moisture."
Remand Results at 19 & n.64 (citing Mem. from Lingjun Wang, Analyst, AD/CVD Operations, to
The File, PD 2 at bar code 3148675-01 (Aug. 6, 2013), ECF Dkt. No. 102-2).   The Department
further found that producers of single-clove garlic compete with multi-clove garlic producers
because both products "are substitutes to some degree."   *See* Remand Results at 19.   These
factors suggest that, contrary to plaintiff's assertions, cost of production cannot account for
Yuanxin's sales price and that there exists some possibility for substitution as to use between
single-clove and multi-clove garlic.

Also, while not conclusive because of the lapse of time, the Department cited some
evidence that single-clove garlic prices fell between 2009 and 2013:

> [S]ales offers for single-clove garlic [(i.e., the same product as that which was sold
> by Yuanxin)] for sale to the United States indicate that while single-clove garlic
> from the 2009 crop was offered for [[              ]], in 2013, the same
> company offered single-clove for as low as [[            ]] and [[            ]]. . . . It is
> therefore reasonable to conclude that similar agricultural products experience
> similar pricing patterns and trends, rather than move in opposite directions.

Remand Results at 17.

Further, plaintiff contends that "Yuanxin seems to have been the *only* Chinese
[single-clove] garlic exporter in its POR," giving it a monopoly in the market and, thus,
"monopoly pricing."   Pl.'s Comments 9.   Based on the differences between monopolistic
markets and pure competition, Yuanxin reasons that "prices for single-clove garlic are not likely to
rise and fall with prices for multi-clove garlic."   Pl.'s Comments 9.

Despite plaintiff's claims to the contrary, the court does not find any record evidence to
suggest that Yuanxin enjoyed a monopoly over the U.S. single-clove garlic market during the
POR.   Rather, plaintiff appears to disprove its own claim that it enjoyed a monopoly on
single-clove garlic in the United States.   Although it insists that Yuanxin was a monopolist during

its POR, as discussed in greater detail below, plaintiff also claims that it was improper for

Commerce, as part of its retail price analysis, to compare Yuanxin's sales price to that of Trader

Joe's, a major retailer that, according to plaintiff, likely purchased single-clove garlic in

significantly larger quantities than that of plaintiff's sale.[18]   Pl.'s Comments 11 ("[I]t is

reasonable to assume that [Trader Joe's] does not purchase [as few kilograms of single-clove

garlic] a year, [as were] sold by Yuanxin.").   If plaintiff indeed held a monopoly over the

single-clove garlic market in the United States during the POR, Trader Joe's could not possibly

have purchased more single-clove garlic than plaintiff sold.


ii.   Price Offers from the PRC

In the Remand Results, in addition to Jinxiang Hejia's U.S. sales price from the prior

period of review, Commerce looked to price offers for single-clove garlic from exporters in the

PRC to the United States.   Remand Results at 10.   Plaintiff also placed on the record a price for a

single reported sale of multi-clove garlic in Japan, as well as its price for a single sale of

single-clove garlic in the Netherlands.   *See* Remand Results at 24; Pl.'s Comments 2.   With

respect to the price offers for single-clove garlic placed on the record by plaintiff, the Department

observed that a Chinese exporter, Chengwu County Minfeng Fruits & Vegetables Co., Ltd.

("Chengwu County"), offered single-clove garlic at a price range of $0.90 to $1.40 per kilogram

---

[18]     As part of its retail price analysis, discussed in greater detail below, Commerce
compared Yuanxin's sales price to Trader Joe's sales price and found that Trader Joe's retail price
was, in fact, lower than plaintiff's export price.   *See* Remand Results at 20.   Because retail prices
are typically higher than export prices as they are further down the distribution chain and reflect a
greater number of costs, Commerce found that this price difference was further evidence that
Yuanxin's transaction was not bona fide.   Remand Results at 11–12.   Plaintiff objected to this
comparison because, it claimed, Trader Joe's had the ability to keep its costs down by purchasing
in greater quantities than Yuanxin sells.   *See* Pl.'s Comments 11.   Of course, that would not be
the case if Yuanxin were the only source of single-clove garlic during the POR.

during Yuanxin's POR.   Remand Results at 10–11.   Thus, Commerce determined that Yuanxin's

price was significantly higher than the offer prices from the PRC.[19]   Remand Results at 11.

Plaintiff insists, without providing a citation for its argument, that Commerce "never uses

price offers when actual prices are available," and that the Department has not "demonstrated how

these price offers are more relevant than Yuanxin's actual prices to Japan or The Netherlands."

Pl.'s Comments 10.   Plaintiff further contends that the Department has ignored the prices of

Yuanxin's sales to "Japan and The Netherlands, as well as actual prices in the U.S. (and

worldwide) four years after the POR, which show that single-clove garlic sells throughout the U.S.

at a price generally about 400 percent of that for multi-clove garlic."   Pl.'s Comments 7.

The court cannot credit plaintiff's arguments.   Commerce used the price quotes from the

PRC to assess whether Yuanxin's sales price was bona fide, not as a source of surrogate values.

*See* Remand Results at 23.   For this purpose, the price quotes were probative because they were

lower than plaintiff's sales price even though, as the Department notes, price quotes are usually

"higher than consummated transaction prices [because t]hey represent the seller's starting point,

before negotiations with the buyer [have] drive[n] the price down."   *See* Remand Results at 23.

As to the sales prices into Japan and the Netherlands, this Court has questioned the

reliability of gauging the price of merchandise sold in the United States by comparing it to prices

for the same merchandise sold elsewhere, because the market forces and conditions of supply and

demand present in the United States differ from those abroad.   *See, e.g.*, *Hejia*, 35 CIT at __, Slip

Op. 11-112, at 19 ("[T]he court questions how prices from these [other] markets can serve as

probative contrasts.   Should Commerce continue to rely upon this rationale on remand, it must

---

[19]        Commerce found that Yuanxin's price of [[        ]] was [[     ]] percent
[[          ]] than the Chinese offer prices.   Remand Results at 11.

justify the comparison of [Jinxiang] Hejia's price with prices that are subject to such disparate market forces.").   Here, other, more reliable, information was available on the record, including sales prices and price quotes from Jinxiang Hejia and offers from a Chinese exporter for sales into the United States.   Thus, Commerce did not need to rely on sales from the PRC into countries other than the United States.   That is, single-clove garlic sales prices and sales price offers to the United States are more representative of the price that the U.S. market commands than sales into third countries.   Further, plaintiff's sale to Japan was of multi-clove, not single-clove, garlic, and for that reason was less probative than the U.S. price offers for single-clove garlic that Commerce relied upon as part of its analysis.[20]

### iii.   Retail Prices

Finally, as part of its price analysis in the Remand Results, the Department determined that Yuanxin's sales price was considerably higher than the January 2008 Trader Joe's retail price for single-clove garlic, "despite the fact that the [Trader Joe's] retail price includes additional costs not reflected in Yuanxin's sale price."[21]   *See* Remand Results at 12.

According to plaintiff, Commerce makes an "apples-to-oranges" comparison by looking to Trader Joe's single-clove garlic retail price, because, unlike Yuanxin, "Trader Joe's is a huge national chain" with "great bargaining power" that likely purchases single-clove garlic in much larger quantities than the amount sold by Yuanxin.   Pl.'s Comments 11.   By comparison, it

---

[20]     Notably, despite arguing throughout this proceeding that single-clove and multi-clove garlic prices are not comparable, Yuanxin now argues, in this instance, that Commerce should have relied on the sales prices for multi-clove garlic.   *See* Pl.'s Comments 7, 8–9, 10.

[21]     Commerce found that Yuanxin's sales price was [[                    ]] than Trader Joe's January 2008 single-clove garlic price of [[          ]] per kilogram.   *See* Remand Results at 11–12.

argues, "both Yuanxin and [Jinxiang] Hejia sold in small quantities, and to small downstream

re-sellers," which, according to Yuanxin, might explain why Trader Joe's retail price was lower

than Yuanxin's sales price.   *See* Pl.'s Comments 11.

As an initial matter, plaintiff's argument regarding the quantities at which Trader Joe's

purchased its single-clove garlic, and its claim that Trader Joe's possesses significant bargaining

power that allows it to purchase single-clove garlic at a much lower price than that at which

Yuanxin sold its single-clove garlic, are mere speculation.   That is, there is nothing on the record

to support these contentions.   *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed.

Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'"

(quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1276 (Fed. Cir. 2002) (Dyk, J., dissenting)

(internal quotation marks omitted)).   Moreover, the court further finds plaintiff's argument to be

unpersuasive because it ignores the significance of the Trader Joe's price.   The Trader Joe's price

was noteworthy to Commerce because, despite being further down in the transaction chain, Trader

Joe's retail price was still significantly lower than Yuanxin's price.   Therefore, even though most

retail prices on the record were higher than Yuanxin's, that plaintiff's price was higher than one

retailer's price is at least some evidence that the transaction in question was not bona fide.   *See*

Remand Results at 20–21.

Thus, a comparison of single-clove garlic prices supports Commerce's conclusion that

Yuanxin's sales price was aberrational and thus not bona fide.

> 2. *Commerce's Determination that Yuanxin's Price Premium Was Not Bona Fide*
>    *Is Sustained*

After finding that plaintiff's sales price was aberrational when compared to other prices,

the Department then looked at the price premium for plaintiff's sales price for single-clove garlic

over prices for multi-clove garlic.   As part of its analysis, Commerce looked to the price premium,

stated as a percentage difference, between the prices of single- and multi-clove garlic, for (1)

Jinxiang Hejia's U.S. sales price, (2) retail sales prices, and (3) price offers from the PRC.   *See*

Remand Results at 12.   The Department found that, despite "single-clove garlic demand[ing] a

higher price than multi-clove garlic in . . . the PRC and the United States," Yuanxin's price

premium (i.e., the percentage difference between the sales price of its single-clove garlic and

prices for multi-clove garlic that entered the United States during the POR) was unjustifiably

higher than the other premiums on the record.   Remand Results at 12 ("As discussed below, there

is evidence on the record that supports the contentions that a premium for single-clove garlic

exists.   Specifically, we find that single-clove garlic demands a higher price than multi-clove

garlic in . . . the PRC and the United States.   However, we find that any premium that may be

charged above the price for multi-clove garlic does not explain the sales price for Yuanxin's [new

shipper review] sale.").   In other words, although a premium price on sales of single-clove garlic

could be explained and supported by record evidence, the size of the claimed premium on

Yuanxin's sale could not.

         First, Commerce determined Jinxiang Hejia's single-clove garlic price premium above the

AUV for multi-clove garlic during Jinxiang Hejia's period of review.   *See* Remand Results at 12.

The Department then compared that premium with Yuanxin's premium above the AUV during its

POR, and reasonably concluded that plaintiff's premium was "aberrationally high."[22]   Remand

---

[22]         Commerce compared Jinxiang Hejia's single-clove garlic price premium of
[[     ]] percent over multi-clove garlic to Yuanxin's premium of [[      ]] percent.   Remand
Results at 12.   To derive these price premiums, Commerce (1) calculated the percent difference
between Jinxiang Hejia's single-clove garlic sales price and the AUV during Jinxiang Hejia's
period of review, and calculated the difference between Yuanxin's sales price and the AUV during
Yuanxin's POR.   Remand Results at 21.

Results at 12.   Put another way, by comparing Yuanxin's premium to the calculated premium for

Jinxiang Hejia, the Department found that plaintiff's premium was not in line with Jinxiang

Hejia's market-driven premium.

Next, the Department looked to U.S. sales receipts and grocery store photographs from

July 2013 that were submitted by Yuanxin on remand.   Remand Results at 12–13.   Although

some of these receipts were illegible, such that the prices could not be determined, Commerce

nevertheless used the remaining legible receipts and photographs to find that the highest

single-clove garlic retail price of $3.99 per pound was 303 percent higher than the $0.99 per pound

retail price for multi-clove garlic.   Remand Results at 13.   Thus, the Department observed that,

compared to this 303 percent premium, "Yuanxin's . . . premium for single-clove garlic over the

AUV for multi-clove garlic during the POR" was "aberrationally high."   Remand Results at 13.

Given the difference between Yuanxin's premium and this 303 percent premium, the court cannot

credit plaintiff's assertion that the retail premium is evidence that Yuanxin's price was reasonable.

Last, Commerce considered PRC price offers and a news report as additional points of

comparison in its price premium analysis.   Assuming that Chengwu County (a Chinese exporter

of garlic) sold single-clove garlic at its highest advertised asking price of $1.40 per kilogram and

sold multi-clove garlic at its lowest asking price of $0.90 per kilogram, the Department found a

price premium of 55.56 percent for single-clove garlic.   Remand Results at 13.   As compared to

the AUV for multi-clove garlic during plaintiff's POR, Commerce noted that the Chinese price

premium was "a fraction" of Yuanxin's premium.[23]   *See* Remand Results at 13.   Moreover, the

Department referenced an article from a Chinese financial newspaper that indicated that the

---

[23]      Commerce found, based on the AUV for multi-clove garlic of [[          ]] per
kilogram, that the Chinese price premium was [[      ]] percent, which it then compared to
Yuanxin's price premium of [[      ]] percent.   Remand Results at 13.

single-clove garlic price premium in the PRC in May 2010 was significantly lower than Yuanxin's

price premium.[24]   *See* Remand Results at 13–14 (citing *China: Garlic Prices Surge Once Again*,

FRESHPLAZA, May 5, 2010 at 7, PD 13 at bar code 3150408-02 (Aug. 16, 2013), ECF Dkt. No.

102-13).   Thus, the Department concluded that, while single-clove garlic did command a

premium in the Chinese market, the premium did not approach that claimed by plaintiff.

Plaintiff objects to defendant's price premium analysis as a whole, arguing that, "[w]hile

Commerce states that it is no longer comparing Yuanxin's price to the AUV, it in fact does just

that" by calculating price premiums using the AUV.   Pl.'s Comments 12.

This argument is unpersuasive.   In its Remand Results, Commerce no longer relied on a

*direct* comparison of Yuanxin's price to the AUV, instead analyzing price premiums *based on* the

AUV.   *See* Remand Results at 8, 12.   That is, rather than simply comparing Yuanxin's price to

the AUV, Commerce now calculates price premiums for single-clove garlic over multi-clove

garlic stated as percentages.   Given the scarcity of record evidence on average U.S. single-clove

garlic import prices both during and outside of Yuanxin's POR, Commerce's comparison of

Yuanxin's sales price to the AUV data in order to determine a percentage price differential does

not conflict with the Department's practice, of considering single-clove garlic to be a unique

product, established in *Hejia*.   Rather, it confirms it.   Put differently, Commerce's use of the

AUV in this case is not inconsistent with its determination in *Hejia*, where it found that a direct

comparison of single-clove garlic prices to the AUV was not probative because the AUV

contained mostly multi-clove garlic prices.   Here, Commerce looked at various price premiums

--------

[24]     The article, which quoted the Chongqing Economic Times, a Chinese business
newspaper, stated that in May 2010, single-clove garlic had a price premium of 15 percent.
Remand Results at 14 (citing *China: Garlic Prices Surge Once Again*, FRESHPLAZA, May 5, 2010
at 7, PD 13 at bar code 3150408-02 (Aug. 16, 2013), ECF Dkt. No. 102-13).

for single-clove garlic over the AUV, and in so doing, compared the price premium for plaintiff's

single-clove garlic to other calculated premiums for single-clove garlic.   Accordingly, the court

finds that Commerce's methodology is reasonable and that it complies fully with its order in

*Yuanxin I.   See Yuanxin I*, 37 CIT at __, Slip Op. 13-77, at 25–26.

Next, plaintiff argues that "[t]he majority of retail prices in the U.S. in 2013, based on

actual purchases contained in the remand record," are higher than Yuanxin's price,[25] meaning that

there would be "huge profit [margins] for retailers" purchasing from Yuanxin.   Pl.'s Comments

11.   Thus, plaintiff claims that its price was reasonable because hypothetical U.S. resellers could

buy at Yuanxin's price and still make a profit.   In addition, plaintiff claims that Commerce found

that "Yuanxin . . . made [an enormous] percent profit since its price is that much higher than a

completely different product, multi-clove garlic."   Pl.'s Comments 13.

These arguments miss the point.   As defendant correctly notes, it appears that Yuanxin

conflates "price premium" with "profit."   Def.'s Comments 13.   For example, although plaintiff

repeatedly refers to Commerce's calculation of Yuanxin's profit (i.e., the percentage difference

between plaintiff's sales price of its single-clove garlic and the AUV for multi-clove garlic), this

value actually refers to plaintiff's price premium above the AUV for multi-clove garlic during its

POR.   *See* Pl.'s Comments 12–13.   Nowhere does plaintiff indicate that it has calculated

Yuanxin's profit from its sole sale, nor does it provide data that would enable the court to

determine its profit.   Further, whether Yuanxin, as the exporter, made a profit is not relevant to the

bona fides analysis.   Rather, the relevant inquiry is whether the exporter's U.S. customer made a

profit.   *See Foshan Nanhai Jiujiang Quan Li Spring Hardware Factory v. United States*, 37 CIT

---

[25]       According to plaintiff, U.S. retail prices in 2013 were approximately $8.80 per
kilogram, compared to Yuanxin's price of [[          ]] per kilogram.   Pl.'s Comments 11.

__, __, 920 F. Supp. 2d 1350, 1353 (2013) ("In determining whether a company's sales are *bona fide*, Commerce weighs the totality of circumstances, including such factors as . . . whether the goods were *resold* at a profit . . . ." (emphasis added) (citation omitted) (internal quotation marks omitted)).   Here, plaintiff did not place on the record the sales price between the sporting and athletic goods manufacturer (Yuanxin's U.S. customer), and that company's purchaser.   Thus, although a reseller's profit margin is one factor generally accounted for as part of Commerce's bona fides analysis, the record here did not contain necessary information to permit Commerce to calculate the U.S. customer's profit.

### 3.  Conclusion

Based on the Department's comparison of Yuanxin's sales price to (1) Jinxiang Hejia's price, (2) price offers from the PRC, and (3) the Trader Joe's retail price, the court finds that Commerce has demonstrated with substantial evidence that plaintiff's price was aberrational when compared to other prices.   In addition, having evaluated Commerce's price premium analysis, the court finds the Department's determination that plaintiff's price premium was not bona fide to be supported by substantial evidence and in accordance with law.

## B.  The Department Properly Rejected Plaintiff's Submissions of Additional Information

In its comments, Yuanxin objects to Commerce's rejection of its two submissions, which were not included in the record, one, for being beyond the scope for which Commerce reopened

the record,[26] and the other, as untimely.   Pl.'s Comments 18.   Plaintiff argues that Commerce

erred in refusing to consider information concerning (1) the industries in which its importer (the

sporting and athletic goods manufacturer) operates and (2) its untimely submission of prices of

single-clove garlic in the United States.   Pl.'s Comments 18, 19.   According to plaintiff,

Commerce should have accepted these filings because "the record was incomplete without full

information required to make a reasoned, reasonable decision, either by Commerce or the Court."

*See* Pl.'s Comments 18.   With regard to the importer information, which was rejected as "beyond

the limited scope for which the Department opened the record," Yuanxin "believes that the [c]ourt

prematurely ruled on the importer issue" in *Yuanxin I* because plaintiff had not been asked to

submit information on the industries in which the importer operates in the initial new shipper

review, and, as a result, had not previously provided it.   *See* Remand Results at 5; Pl.'s Comments

20; *Yuanxin I*, 37 CIT at __, Slip Op. 13-77, at 24, 25.   With respect to timeliness, Yuanxin points

out that Commerce was granted additional time to file its Remand Results, "[y]et, with all this

extra time, Commerce did not grant a single extra day to the parties to supplement the record."

---

[26]     The record is unclear as to the date Yuanxin submitted the importer documentation.
The Department's Remand Results state that the importer documentation was filed on August 16,
2013, which would render Yuanxin's submission timely.   *See* Remand Results at 5.   The
administrative record, however, indicates that the documentation was submitted on August 19,
2013, three days after the deadline, rendering plaintiff's submission untimely.   *See* Letter from
John J. Kenkel, Counsel for Yuanxin, to Hon. Penny Pritzker, Assistant Secretary for Import
Administration, U.S. Department of Commerce at 1, PD 10 at bar code 3150399-01 (Aug. 19,
2013), ECF Dkt. No. 102-10; Letter from Mark E. Hoadley, Acting Office Director, AD/CVD
Operations, to John J. Kenkel, Counsel for Yuanxin, PD 15 at bar code 3150811-01 (Aug. 21,
2013), ECF Dkt. No. 102-15 ("Rejection Letter").   While plaintiff, in its comments on the
Remand Results, appears to concede that its submission was untimely, at oral argument plaintiff's
counsel stated that the importer documentation was submitted on August 16, 2013.   *See* Pl.'s
Comments 19.   Nonetheless, the timeliness of plaintiff's submission is immaterial because the
Department, when rejecting the importer documentation, specified that the information was
beyond the purpose for which Commerce had reopened the record.   *See* Rejection Letter.

Pl.'s Comments 19.   Plaintiff also states that it did not request an extension because it was

"unaware that [it] was able to collect additional data."   Pl.'s Comments 19.

Defendant notes that Yuanxin concedes that it did not request an extension of time and

argues that (1) the Department provided parties with "ample time (17 days) to submit new

information," (2) Yuanxin "was on notice of the issues to be re-opened as of the [c]ourt's June 18,

2013 remand order," and (3) Commerce properly exercised its discretion to reject untimely

submissions.   Def.'s Comments 14–15.   Defendant-intervenors additionally point out that

Yuanxin does not provide an explanation for why it was unable to submit the information in

question in a timely manner.   Def.-ints.' Comments 12–13.

The court finds that Commerce acted within its discretion in rejecting plaintiff's filings,

both the importer documentation, which was rejected as "beyond the limited scope for which the

Department opened the record," and the additional single-clove garlic market and price

information, which was rejected as untimely.   Remand Results at 5–6.   Although in *Yuanxin I*,

the court gave the Department the discretion to reopen the record for any purpose, the Department

was not obligated to do so with respect to issues the court had already decided.   *See Yuanxin I*, 37

CIT at __, Slip Op. 13-77, at 26.   The court ruled in *Yuanxin I* that "Commerce's conclusion that

the circumstances surrounding Yuanxin's sale were 'atypical of normal business

practice'"—given that "a sporting goods manufacturer acted as a middleman for its sale to the

[U.S. w]holesaler, a company that had previously purchased single-clove garlic directly from

Hejia"—was reasonable.[27]   *Id.* at __, Slip Op. 13-77, at 24.   That being the case, Commerce was

under no obligation to accept plaintiff's submission.   That is, Commerce was only required to

_____

[27]      It is worth noting that the court found the sale atypical, not that it was atypical for a
sporting and athletic goods manufacturer to be dealing in foodstuffs.   *See Yuanxin I*, 37 CIT at __,
Slip Op. 13-77, at 24.

reopen the record for the limited purpose of soliciting additional information about the garlic

market, an order with which Commerce complied.   *See id.* at __, Slip Op. 13-77, at 26; Remand

Results at 5–6.   Information about the operations of plaintiff's importer[28] clearly falls beyond the

scope of the court's order and the type of information Commerce solicited upon reopening the

record.

Additionally, the Department did not abuse its discretion in rejecting the market and price

data that Yuanxin filed nine days after the submission deadline.   The deadline with which plaintiff

failed to comply pertained to the submission of new "information regarding whether single-clove

garlic is a unique product, whether there is a distinct or specialized market for single-clove garlic,

and whether these facts affect the price that single-clove garlic commands."   *See Yuanxin I*, 37

CIT at __, Slip Op. 13-77, at 26.   Plaintiff was on notice as of June 18, 2013, with the publication

of *Yuanxin I*, that it would have the opportunity to submit new information concerning the

single-clove garlic market to supplement the record.   *See id.* at 25–26.   Although plaintiff insists

that the Department should have voluntarily afforded it an extension of time to submit this

information (i.e., until August 30, 2013), it has offered no reason for the delay and why it was

unable to comply with Commerce's seventeen-day window for submissions.   *See* Remand

Results at 25 ("The Department provided parties with 17 days to submit new information plus an

additional five days to submit rebuttal information.   Moreover, the Department was compelled to

re-open the record as a result of the [c]ourt's remand on June 18, 2013, in which the [c]ourt clearly

identified the evidentiary issue at stake: whether substantial evidence indicates single-clove and

---

[28]       Apparently, plaintiff submitted this information in order to further explain its
"importer's background, specifically, the industries in which it operates."   Pl.'s Comments 19
(citation omitted).   Plaintiff insists that this documentation would have demonstrated that the
importer operated in the food industry.   *See* Pl.'s Comments 19–20.

multi-clove garlic are distinct products.   Therefore, parties had more than six weeks to gather

relevant evidence and 22 days to place it on the record.").   In addition, plaintiff has provided no

explanation as to why it did not seek, as it could have, an extension from the Department at the

time.   *See* 19 C.F.R. § 351.302.

Thus, having already found that Commerce complied in accordance with the court's order,

the court holds that the Department acted within its discretion in rejecting plaintiff's untimely

submission.   *See CEMEX, S.A. v. United States*, 19 CIT 587, 597–98 (1995) (citations omitted).


## CONCLUSION

Based on the Department's examination of the totality of the circumstances and on the

foregoing, it is hereby

ORDERED that the Department of Commerce's Final Results of Redetermination are

sustained.   Judgment will be entered accordingly.

Dated:          March 23, 2015
                New York, New York


                                              _____
                                                   /s/ Richard K. Eaton
                                                   Richard K. Eaton